Good morning, Your Honors, and may it please the Court. I'm Zachary Glantz, appearing for the Appellants, who are the defendants in the District Court. I would like to reserve three minutes, but I will watch the clock. Yes, please do. Thank you. Your Honors, the District Court found that the defendants were not entitled to qualified immunity on the retaliation claim based on a pure misreading of state regulations. The District Court held that there is a disputed question fact as to whether the plaintiff was subjected to drug testing in excess of the frequency authorized by state regulations. The state regulations clearly only provide a minimum number of tests that an inmate could be required to comply with. And here, it's undisputed that the plaintiff never complied and submitted to a drug test. Now, these state regulations serve the important interest of reducing inmate drug use, which serves a number of subsidiary interests, including promoting security and institutional safety, and also encouraging rehabilitation. Under these regulations, the inmates may be randomly selected to submit to a drug test. If an inmate is asked to submit to a test, the inmate must comply, and the failure to submit to a drug test can result in discipline. Another consequence of refusing to submit to a drug test is being required to submit to further drug testing with the frequency increasing based on the number of times an inmate has been disciplined for not complying. I have a question, if you don't mind. The district court did not get into the issue of whether the inmate in this case had a constitutional right to refuse drug testing. Is that correct? That's right, Your Honor. The district court also upheld these regulations against the plaintiff's claimed right to not be subjected to tests on religion-based grounds, and the district court granted. I think the point of my question is this, and steer me in another direction if I'm wrong. If it goes back and the district court determines that Mr. Riley has no constitutional right, based on his expression of religious belief, to refuse a drug test, isn't that the end of the day in terms of qualified immunity? Yes, Your Honor. That's the first thing the Supreme Court tells us to look at, is whether there's a violation of the constitutional right, correct? Absolutely, Your Honor. And here, the district court's conclusion that the plaintiff's rights were violated was entirely premised on its reading of the state regulations. So, you know, what's wrong with the district court saying, I don't have the full picture here? At this stage, I've not been asked to determine as a final ruling that Mr. Riley has such a constitutional right. But for the purpose of going forward, this is off of summary judgment, right? That's right. Let's go find that out. What's wrong with that? Well, Your Honor, there is no need to do that, because there is no clearly established right here that the district court pointed to. Again, the district court's conclusion on both prongs of the qualified immunity analysis was, again, tied only to the state regulations. And so it's possible that the district court could conclude that there was such a right, but it wasn't established at the right time. Does the case law, particularly from the U.S. Supreme Court, on the assertion of religious beliefs in a custodial situation include an examination of the viability of such a claim as Mr. Riley is making here? In other words, is the district court entitled to examine whether this is really his faith and whether he really believes this? The answer is no, isn't it? I believe the answer is no, Your Honor. The district court kind of skimmed over the analysis of what the right at issue here was and focused on the regulations and its conclusion that they may have been violated, and that was the only basis for concluding that the defendants were not entitled to qualified immunity. If Mr. Riley were Jewish and he was refused kosher food, would that stand up? Your Honor, it's not disputed that inmates have the right to practice their religion in prison subject to some restrictions based on the requirements of ensuring safety and security within the prison context. So a prison could not tell a Jewish inmate you have to eat non-kosher food? No, Your Honor, but I believe there are some limitations to Jewish inmates' rights to have kosher meals. They are not free to select their own. Go ahead with your argument. Thank you, Your Honor. Counsel, on the second prong of qualified immunity, the Shepard case cites to Bruce v. Ilst and says essentially, which is a 2003 case, which says, Bruce clearly established that prison officials may not abuse a valid procedure as a cover or ruse to essentially punish an inmate. I'm paraphrasing a little bit. But the fact that there's a regulation in place doesn't mean that you can use that in a retaliatory fashion. So that's the second prong. I didn't hear or didn't understand your answer on the first prong as to where the district court misstepped in finding that there was a material issue of fact on the retaliation part of that. Can you give me that answer? Yes, Your Honor. The district court's conclusion that the Constitution may have been violated was based on its conclusion that the plaintiff may have been harassed if, accepting his version of events, he'd been approached and asked to test, to submit to drug tests in excess of the frequency prescribed by state regulations. Well, let's assume, I'll give you that, that the district court misread the regulations at issue and that regulations really set the floor in terms of the number of times that the inmate can be asked to test rather than a hard ceiling. But what is your argument on whether this advances legitimate penological goals? Because both sides sort of rely on the regulation. As I understand your briefing, it's well because the regulation says that we can, and so therefore we win, that therefore it doesn't warrant a trial, essentially. Do you have any more than that? Well, Your Honor, the regulations serve the important benefit or the important goal of reducing inmate drug use. And to accomplish this, the regulations require actual drug tests. Here, the plaintiff never actually complied with the request to take a drug test during the relevant time, and therefore those legitimate purposes, the defendants were trying to serve those legitimate purposes by asking the plaintiff to submit to drug tests, but they were never able to. So your answer is that it advances the legitimate penological goal because there's no indication in the record that the drug tests were asked for a retaliatory purpose? Yes, Your Honor.  The district court only relied on the possible frequency of the requests that the plaintiff submit to testing, and in the district court and here on appeal, the plaintiff has not identified other specific evidence of the defendant's motivations. The defendant's conduct was only judged by the district court in relation to the state regulations. As a result of that, the district court's reasoning on both prongs of the qualified immunity falls apart, particularly with respect to the second prong of the qualified immunity analysis. Here, this court can certainly resolve the issue of whether the right was clearly established at the relevant time. The district court and the plaintiff have not identified any case providing that an inmate may not be requested to submit to a drug test and refuse, and then simply no longer be asked anymore. So, again, because there is no clear indication of how many requests might violate the Constitution, a reasonable officer in the defendant's position certainly could, viewing these regulations and understanding that a certain number of tests was required from an inmate, could view the situation where the plaintiff never complied with the testing request and believe that. Was there any evidence as to the amount of tests that were given to persons who had different religious beliefs than those claimed by the appellee? That is not in the record, Your Honor. So there's no pretext testimony here? No, Your Honor. All right. Thank you. Given the plaintiff's continual refusal to submit to any tests whatsoever, viewing the regulations, reasonable officers in the defendant's position certainly would have had no warning that their conduct could violate the Constitution. For these reasons, the defendants respectfully request that this Court reverse the district court and conclude that the defendants are entitled to qualified immunity with respect to the retaliation claim. If Your Honors have no further questions. Do we reverse and say that you're entitled to qualified immunity, or do we reverse for the district court to take another look at the first prong of qualified immunity, assuming that the basis is that the district court misread the regulations? Well, Your Honor, there is no reason for the district court to weigh in again. All that is presented to this Court are the pure questions of law, of whether the defendant's conduct as the defendants have accepted on the plaintiff's version of facts, whether that conduct violates the Constitution, and additionally, whether the relevant right was clearly established at the relevant time. Either of those questions are just pure questions of law that this Court can and should find in the defendant's favor. Well, isn't it pretty clearly established that the prison authorities can't discriminate based on religion? That certainly is clearly established, Your Honor. The question for the qualified immunity analysis is whether a more specifically defined right pertaining to this context was established at the relevant time, and there was no clear law at the time that any number of requests to submit to a drug test in the prison context would violate the Constitution. You're arguing Casilla versus Hughes. Excuse me? Never mind. I apologize, Your Honor. If Your Honors have no further questions, I'll reserve the rest of my time for rebuttal. All right. Thank you. Thank you, Your Honor. Good morning, Your Honors. I'm Alex Kuhlman from Mr. Riley. May it please the Court, the crux of the dispute in this case is factual, not legal, and jurisdiction does not exist to resolve those factual quarrels via interlocutory appeal. The defendants slash appellants are endeavoring to reframe these factual contentions as purely legal issues for the purpose of asserting that jurisdiction exists, and the way they're doing that is they are saying, we are going to concede every allegation that Mr. Riley has made, but in fact, that's not what they're doing. Even now, in their comments today before this Court, they said there is no specific evidence that defendants are acting in a retaliatory way, and that's the same position they've taken throughout their briefing. Over and over again, they refuse the central allegation that Mr. Riley is making, which is that defendants are retaliating against him, and that the evidence supports an inference of retaliation. So because this is a factual quarrel, jurisdiction does not exist to resolve that question via interlocutory appeal. The district court's analysis really hinged on its interpretation of the regulations as setting a ceiling in terms of the number of times you can be asked. Right. Now, that's, I don't think, is correct. Now, we've got to go beyond that, and you say, well, there are factual issues here, and so therefore the factual issues give rise to an inference of retaliation, so therefore they haven't met the legitimate penological goals. Tell me what those factual issues are, because the district court didn't engage in the factual record in this case. Sure. The factual record is relatively sparse because Mr. Riley has been litigating this So he hasn't had the opportunity to do the full panoply of discovery. But what we do know is that over a roughly four-year period, Mr. Riley was subjected to dozens and dozens of these requests for tests. He alleges that it became so frequent that on at least one occasion he was asked three separate times in the same day to submit to testing, and he was written up over and over and over again for his refusals to consent. He alleges that he stated repeatedly that he wouldn't participate in this system because of his religious convictions, and that's in the record, and that was made clear at some point along during the four-year period. And it's also clear that in 2018, although the regulations didn't change and although Mr. Riley hadn't done anything different, the testing abruptly stopped and has never resumed.  I take it your first position is that this court has no jurisdiction because this is a factual dispute, not a legal dispute. Right. The second element of qualified immunity is purely a legal question, is it not? I agree, yes. Why can't we discuss that? Oh, we should. We should, but... Wouldn't that give us jurisdiction if there's a claim under qualified immunity under the second element of qualified immunity, assuming that there's a violation of constitutional right? Is it clearly established with sufficient particularized notice so that a reasonable police officer would know that he shouldn't ask for more testing because of a religious claim, right? Right. Isn't that a legal issue? Well, I'll concede, yes, that is a legal issue, and if the court wants to get to it and take all Mr. Riley's factual allegations in the light most favorable to him so that it actually is framed up as a purely legal question. But there's one element of Mr. Riley's factual claims that bothers me, which is this. Where is the evidence that the prison authorities were not treating him harshly for reasons other than religious claims? I mean, maybe they didn't like him, maybe they thought he was a member of a gang, maybe they were racially discriminatory. Where is the evidence that they were religiously discriminatory? Well, it's possible, of course, there could have been other reasons for the conduct in this case. Mr. Riley is merely alleging that if the facts are taken in the light most favorable to him and with all the inferences that those facts support, then he's made out a case of retaliation. Well, which is denied by the officers. So then we go to the third step of saying, all right, where's the evidence that shows that their denial is simply based on pretext? Well, I don't believe it's his burden to disprove every alternate possibility. I think in this case— No, no, no. The question I have is this. Where is the evidence that they were discriminating against him because of religion rather than for some other reason? In a normal three-step analysis, we always ask for, is there evidence of inconsistent actions that shows pretext? Is there any evidence of that here? Well, as I laid out earlier, there's a four-year pattern of facts that I think supports the inference. And in particular, I'm referring to things like three tests on a single day or three tests on a— There's no question he was frequently demanded to have tests. The question is, where's the evidence of any statement by a police officer, I don't like your religion or I don't believe your religion or religion is not a factor here? There's none of that. Well, you're right. Of course, you will not be surprised to hear that defendants don't typically make those kinds of statements real openly. But in Shepard v. Quillen, for example— Where's the evidence that they used religion as to this person but not religion as to others? There isn't any. But I don't think there has to be. Because a neutral—or the application of an ostensibly neutral policy, as in Shepard v. Quillen or Bruce v. Ilst, can nevertheless shade into retaliation or it can appear to shade into retaliation based on the way the policy is implemented. And that is what he is alleging. And his facts must be interpreted in the light most favorable to that claim, not, as the defendants would have it, flipping those facts around and viewing them in the light most favorable to their point of view. So the court, if it wants to address this purely legal question of qualified immunity, ought then to also do what occurred in Shepard v. Quillen and Bruce v. Ilst, which is to view the facts in the light most favorable to the plaintiff, to Mr. Riley. So not looking for other reasons why this four-year pattern of testing requests could have occurred, but taking him at his word that, in fact, he reported over and over again, I'm not going to do this because of my religious convictions, and they accelerated the pace of testing until they finally abruptly stopped it in 2018. So he's made out that case that retaliation occurred in response to his religious assertions, and his case should be accepted if we're going to get into the question of qualified immunity at all. But as I say, these are factual disputes. So I think the better course is just to kick this case out. It doesn't belong here on an interlocutory appeal because it is so intensely fact-based. Let me ask you this, because his best facts, as you say, are just the repeated demands and, in his view, excessive demands for drug testing, despite his protestations on religious grounds. On the second prong of the qualified immunity is Shepard, your best case, because that involves a different factual scenario. So my question to you is, is that defined at too high of a level of generality for it to help him in this case? Because, you know, drug testing, par for the course in the prison context. Absolutely, absolutely. Shepard, Bruce Vils, and the case I cite in the briefing called Pratt are my best cases, and they are not about drug testing, and so I'm not going to fight that fight. But I don't believe the right has to be defined so tightly in this context, in the First Amendment context. The Supreme Court has emphasized that the qualified immunity analysis and what's clearly established needs to be pretty tightly tailored, particularly in the Fourth Amendment context where officers are responding to these, you know, heated, potentially violent situations because we don't want courts to second-guess the actions of officers. This is a different sort of case. It's four years of deliberate behavior, very slowly accreting over time. There's not any split-second type decision. It's not a Fourth Amendment analysis. Therefore, as in Shepard, as in Bruce, there doesn't need to be a case exactly the same as this case in order for it to be clearly established that retaliating against an inmate for his First Amendment expression is against the law. That has been clearly established for three decades now, and that part of it isn't really arguable, although it's true. Those cases don't deal with precisely the same factual scenario that's here. If the Court doesn't have any other questions, I'll submit. Thank you. Thank you. Your Honors, two brief points. First, the defendants accepted the plaintiff's own testimony. It's not disputed that the plaintiff was approached and asked to submit to drug tests sometimes more than once in a day, and that he was disciplined sometimes when he refused a request. The plaintiff asks that the Court make all inferences in his favor and in that way reverse the district court. But as this Court recognized in the Jeffers case that we cite in our briefing, a plaintiff has to have more of a defendant's improper motivation than just a mere allegation. Here, the district court's only conclusion on the defendant's conduct potentially being improperly motivated was, again, tied to the frequency that it read out of the regulations. There is no specific evidence in the record that the defendants were doing anything other than simply trying to enforce these regulations defining the drug testing program. I think their point, Counsel, is that the regulations alone is not enough to save your case because there's case law dating back to 2003 that the existence of regulations doesn't mean that there's a valid penological goal, right? Because you can't use the cover of regulations to retaliate against somebody. Yes, Your Honor. Regulations cannot be used as a pretext, but here there is no evidence that they were being used as a pretext. There is just the evidence that the plaintiff did not object on the grounds that he was innocent or on the grounds that he was not using drugs. He objected on the basis of his religion. A reasonable officer in the defendant's position could reasonably believe that they still would need to try to test him to serve the goals of the drug testing program in the prison. So your position is that there's no direct evidence of religious bias and no pretext evidence that the testing was based on religious bias. That's right, Your Honor. And so, therefore, there was no violation of a constitutional right, so we don't have to get to the second prong of qualified immunity. I think that this court could rule on either prong of qualified immunity, either that there was no violation because there is no evidence of pretext or because there is no clearly established case law that would suggest to the officers in the defendant's position that attempting to enforce these facially neutral prison regulations would violate the plaintiff's rights, religious rights. Would there have to be a case saying that attempting to enforce facially neutral testing procedures cannot be used if there is a religious objection? I think that what's at issue here is the specific frequency that the plaintiff claims he was approached, and there is no case law that would have indicated to a reasonable officer that the conduct as alleged here violated the Constitution. Thank you, Your Honor. Thank you very much, counsel, both sides for your argument. The matter is submitted. That concludes our calendar for this morning. We're adjourned for the week. Thank you.
judges: HAWKINS, BEA, NGUYEN